Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/08/2020 08:17 AM CDT

State of Nebraska, appellant, v.
Parris R. Jedlicka, appellee.

___ N.W.2d ___

Filed February 14, 2020.    No. S-19-268.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.
2. **Judgments: Pleadings: Plea in Abatement: Appeal and Error.** Regarding questions of law presented by a motion to quash or plea in abatement, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court.
3. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.
4. **Criminal Law: Statutes: Legislature: Intent.** In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.
5. **Statutes: Appeal and Error.** When construing a statute, an appellate court looks to the statute's purpose and gives to the statute a reasonable construction that best achieves that purpose, rather than a construction that would defeat it.
6. **Statutes.** All statutes in pari materia must be taken together and construed as if they were one law.
7. **Statutes: Legislature: Intent.** In construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.
8. **Statutes: Legislature.** A definition limited by the Legislature to a particular statute or group of statutes controls only as so specified.
9. **Statutes: Words and Phrases.** The phrase "associated with" must be interpreted within the context of the statute in which it appears.

10. **Probation and Parole: Prosecuting Attorneys.** Selection of allegations of probation violations to be asserted is a prosecutorial and not a judicial function.

11. **Statutes: Words and Phrases.** Traditionally, the word "include" in a statute connotes that the provided list of components is not exhaustive and that there are other items includable though not specifically enumerated.

12. ____: ____. Statutory words are often known by the company they keep.

13. ____: ____. Words grouped in a list within a statute should be given related meaning.

14. ____: ____. It is not for the courts to supply missing words or sentences to a statute to supply that which is not there.

15. **Double Jeopardy.** Application of Neb. Rev. Stat. § 29-2316 (Reissue 2016) by its terms turns on whether the defendant has been placed in jeopardy in the trial court, not by whether the Double Jeopardy Clause bars further action.

16. **Double Jeopardy: Juries: Evidence: Pleas.** In Nebraska, jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge, hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.

Appeal from the District Court for Madison County: JAMES G. KUBE, Judge. Exception sustained, and cause remanded for further proceedings.

Douglas J. Peterson, Attorney General, James D. Smith, Solicitor General, and Matthew J. Kiernan, Deputy Madison County Attorney, for appellant.

Jack W. Lafleur, of Moyer & Moyer, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## INTRODUCTION

The issue in this error proceeding[1] is whether a probation violation allegation asserting a law violation from a

---

[1] See Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2018).

new charge of possession of methamphetamine constitutes a "substance abuse . . . violation"[2] having a prerequisite of 90 days of cumulative custodial sanctions. The district court determined it does and sustained Parris R. Jedlicka's motion to quash an information for revocation of probation. Because we conclude that this allegation of a law violation is not a "substance abuse" violation for revocation of probation purposes, we sustain the exception and remand the cause for further proceedings.

## BACKGROUND

In February 2018, the district court for Madison County sentenced Jedlicka for possession of methamphetamine with intent to deliver, a Class II felony. According to comments by the prosecutor at sentencing, the plea agreement required the State to recommend probation "as long as there's no new charges filed." The State did so, and the court imposed a sentence of Specialized Substance Abuse Supervision probation for 2 years.

Two of the conditions of probation are significant. The first condition set forth in the order of probation was to "[n]ot violate any laws, refrain from disorderly conduct or acts injurious to others." The ninth condition required Jedlicka to, among other things, "not use or possess any controlled substance, except by prescription, and voluntarily submit to a chemical test . . . upon request of the probation officer, or any law enforcement officer, to determine the use of alcoholic liquor or drugs."

Eight months after the sentencing, Jedlicka's probation officer and the chief probation officer filed with the court a document titled "Alleged Probation Violation." It alleged that Jedlicka was recently arrested and charged with possession of a controlled substance and possession of drug paraphernalia.

---

[2] Neb. Rev. Stat. § 29-2267(3) (Reissue 2016).

The State promptly filed an information for revocation of probation. It alleged that Jedlicka had violated the first condition of the court's probation order—the condition that prohibited the violation of any laws. Specifically, the State alleged that "on or about the 9th day of October, 2018, in Platte County, Nebraska, [Jedlicka] did knowingly or intentionally possess a controlled substance, other than marijuana, to wit: Methamphetamine, a Schedule II Controlled Substance." The State did not allege a violation of the ninth condition of probation.

Jedlicka moved to quash the information for revocation of probation. She claimed that under § 29-2267(3), revocation proceedings could not be instituted for a substance abuse violation, because the State did not allege or show that she had served 90 days of cumulative custodial sanctions during the probation term.

The court sustained Jedlicka's motion to quash. It framed the issue as whether Jedlicka's possession of methamphetamine constituted a substance abuse violation. The court observed that a positive urinalysis for the illegal use of drugs was a substance abuse violation under Neb. Rev. Stat. § 29-2266(5) (Reissue 2016), that one cannot use and test positive for illegal drugs without possessing the same, and that persons on probation for a felony conviction can be subject to revocation proceedings for a substance abuse violation only after serving 90 days of custodial sanctions.[3] The court reasoned

> it would lead to a nonsensical result, to conclude that possession of a controlled substance is not a substance abuse violation, but that the actual ingestion into the body of a controlled substance, as specifically noted in the statute, is. On the other hand, if the defendant had been caught delivering a controlled substance to another, a much higher grade felony, or possessing a large quantity

---

[3] See § 29-2267(3).

of a controlled substance, such that an argument could be made that the person possessed a controlled substance with the intent to deliver, then the probationer's actions could be considered to be much more than a substance abuse violation. This is especially pertinent when the Legislature has specifically provided that a substance abuse violation is associated with a probationer's activities or behaviors associated with the **use** of chemical substances.

Because there was no evidence that Jedlicka had served at least 90 days of custodial sanctions, the court sustained the motion to quash the information for revocation of probation.

The State filed an application for leave to docket error proceedings under § 29-2315.01, which was granted. We thereafter granted the State's petition to bypass review by the Nebraska Court of Appeals.

## ASSIGNMENT OF ERROR

The State assigns that the district court erred by sustaining Jedlicka's motion to quash.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law which an appellate court reviews independently of the lower court.[4]

[2] Regarding questions of law presented by a motion to quash or plea in abatement, an appellate court is obligated to reach a conclusion independent of the determinations reached by the trial court.[5]

## ANALYSIS

The outcome of this appeal depends upon statutory interpretation. So we begin by recalling settled principles governing that process.

---

[4] *State v. Brye*, 304 Neb. 498, 935 N.W.2d 438 (2019).

[5] *State v. Betancourt-Garcia*, 295 Neb. 170, 887 N.W.2d 296 (2016).

## Statutory Interpretation
## Principles

[3-5] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[6] In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[7] When construing a statute, an appellate court looks to the statute's purpose and gives to the statute a reasonable construction that best achieves that purpose, rather than a construction that would defeat it.[8]

[6,7] But we do not examine statutes in isolation. All statutes in pari materia must be taken together and construed as if they were one law.[9] Thus, we have said that in construing a statute, the legislative intention is to be determined from a general consideration of the whole act with reference to the subject matter to which it applies and the particular topic under which the language in question is found, and the intent as deduced from the whole will prevail over that of a particular part considered separately.[10]

## Particular Statutes

In granting Jedlicka's motion to quash the alleged probation violation, the district court relied on § 29-2267(3). Under § 29-2267(3), "For a probationer convicted of a felony, revocation proceedings may only be instituted in response to a substance abuse or noncriminal violation if the probationer has served ninety days of cumulative custodial sanctions during the current probation term." Neither party disputes that Jedlicka

---

[6] *State v. Ralios*, 301 Neb. 1027, 921 N.W.2d 362 (2019).

[7] *Id.*

[8] *State v. Hernandez*, 283 Neb. 423, 809 N.W.2d 279 (2012).

[9] *Chilen v. Commercial Casualty Ins. Co.*, 135 Neb. 619, 283 N.W. 366 (1939).

[10] See *In re Application of Rozgall*, 147 Neb. 260, 23 N.W.2d 85 (1946).

had not served 90 days of custodial sanctions. And neither party contends that the alleged violation was "noncriminal." Thus, the district court's action rests on its conclusion that the alleged violation was a "substance abuse" violation.

Jedlicka maintains that a "substance abuse" violation under § 29-2267(3) is specially defined by § 29-2266(5). That statute provides:

Substance abuse violation means a probationer's activities or behaviors associated with the use of chemical substances or related treatment services resulting in a violation of an original condition of probation, including:

(a) Positive breath test for the consumption of alcohol if the offender is required to refrain from alcohol consumption;

(b) Positive urinalysis for the illegal use of drugs;

(c) Failure to report for alcohol testing or drug testing; and

(d) Failure to appear for or complete substance abuse or mental health treatment evaluations or inpatient or outpatient treatment.[11]

Thus, Jedlicka contends that because her alleged possession of methamphetamine in Platte County was an "activit[y] or behavior[] associated with" the use of methamphetamine, the alleged violation was a "substance abuse" violation. It appears that the district court adopted this reasoning, which the State attacks in this error proceeding.

[8] The State asserted during oral argument that by express limitation, the definition of § 29-2266(5) does not apply to § 29-2267(3). As the State pointed out, § 29-2266 begins, "For purposes of [Neb. Rev. Stat. §§] 29-2266.01 to 29-2266.03 [(Reissue 2016)] . . . ." Indisputably, § 29-2267(3) resides outside of that range. We have often recognized that a definition limited by the Legislature to a particular statute or group

---

[11] § 29-2266(5).

of statutes controls only as so specified.[12] Thus, in a strict technical sense, the State is correct that the definition of a "[s]ubstance abuse violation" in § 29-2266(5) does not dictate the meaning of the term "substance abuse . . . violation" in § 29-2267(3).

Despite this technical flaw, we are reluctant to say that the definition has no significance whatsoever. We recognize that in a single legislative act in 2016, §§ 29-2266 and 29-2267 were amended and Neb. Rev. Stat. §§ 29-2266.01 to 29-2266.03 (Reissue 2016) were added.[13] Thus, they are clearly in pari materia and must be read together. Moreover, neither the term "substance abuse" nor the term "substance abuse violation" appears anywhere within the specified range of §§ 29-2266.01 to 29-2266.03. It seems that the 2016 Legislature both defined a term for a range of statutes and omitted the term from the specified range.

We are equally reticent to apply the virtually unfettered result which would naturally flow from Jedlicka's interpretation. Although the district court suggested that delivery of a controlled substance or possession of a "large quantity" would fall outside of the language of § 29-2266(5), we see no textual basis for that limitation. And at oral argument, Jedlicka acknowledged that an expansive interpretation was likely to be asserted in future cases.

[9] The "[s]ubstance abuse violation" definition of § 29-2266(5) includes the phrase "associated with," but our statutes do not attribute any particular meaning to the phrase. "'Associated with' must be interpreted within the context of the statute in which it appears."[14] "Associated" means

---

[12] See *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[13] See 2016 Neb. Laws, L.B. 1094, §§ 19 to 23.

[14] *Pa. Labor Rel. v. Altoona Area School Dist.*, 480 Pa. 148, 155, 389 A.2d 553, 557 (1978).

"[c]onnected in thought, mentally related" or "[c]ombined locally, circumstantially, or in classification (*with*); occurring in combination."[15] In construing a state racketeering statute, a Hawaii court "adopt[ed] an expansive definition of the term 'associated with.'"[16] Federal courts interpreting a federal racketeering statute also appear to liberally define the phrase "associated with."[17] For example, the Fifth Circuit reasoned that "[t]he substantive proscriptions of the . . . statute apply to insiders *and outsiders*—those merely 'associated with' an enterprise—who participate directly *and indirectly* in the enterprise's affairs through a pattern of racketeering activity."[18] It is not difficult to foresee an argument that because of the addictive nature of a probationer's drug use, a burglary or robbery committed to support that use constituted an activity or behavior associated with the probationer's use. We reject such a broad reading regarding the term "substance abuse . . . violation" in § 29-2267(3).

APPLICATION

Here, the State commenced Madison County revocation proceedings against Jedlicka, a probationer convicted of a felony, based upon an alleged violation of law: possession of methamphetamine in Platte County. For multiple reasons, we conclude that the alleged law violation was not a "substance abuse . . . violation."[19]

[10] First, the State's allegation was based on the first condition—to not violate any laws—and not on the ninth

---

[15] "Associated," Oxford English Dictionary Online, http://www.oed.com/view/Entry/11976 (last visited Feb. 7, 2020).

[16] *State v. Bates*, 84 Haw. 211, 224, 933 P.2d 48, 61 (1997).

[17] See, generally, *Reves v. Ernst & Young*, 507 U.S. 170, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993); *U.S. v. Yonan*, 800 F.2d 164 (7th Cir. 1986); *United States v. Elliott*, 571 F.2d 880 (5th Cir. 1978).

[18] *United States v. Elliott, supra* note 17, 571 F.2d at 903.

[19] § 29-2267(3).

condition—to not use or possess any controlled substance. Selection of allegations of probation violations to be asserted is a prosecutorial and not a judicial function.[20] The district court lacked the power to compel the prosecutor to pursue a violation of the ninth condition rather than the first condition.

Second, the limitation of a "[s]ubstance abuse violation" under § 29-2266(5) to activities of drug usage, rather than possession, follows from the statutory language and is consistent with other criminal statutes. The Nebraska Criminal Code[21] does not criminalize "use" of controlled substances. Rather, it prohibits *possession* of them.[22] This distinction is fundamental in Nebraska's criminal law, and we discern no intent of the Legislature to obliterate that difference.

[11-13] Third, the listed examples focus on use and not possession. Employing the word "including" in § 29-2266 demonstrates the list was not intended to be an exhaustive list. Traditionally, the word "include" in a statute connotes that the provided list of components is not exhaustive and that there are other items includable though not specifically enumerated.[23] And because the identified examples of substance abuse focus on use rather than possession, none of the items listed is a misdemeanor or felony. Possession of methamphetamine, on the other hand, is a felony.[24] Noscitur a sociis is a "well-worn Latin phrase that tells us that statutory words are often known by the company they keep."[25] Our cases have not used that phrase, but we have stated that words grouped in a list

---

[20] See *Polikov v. Neth*, 270 Neb. 29, 699 N.W.2d 802 (2005).

[21] Neb. Rev. Stat. §§ 28-101 to 28-1357 and 28-1601 to 28-1603 (Reissue 2016, Cum. Supp. 2018 & Supp. 2019).

[22] See § 28-416. But, see, § 28-417(1)(g) (criminalizing being under influence of controlled substance).

[23] *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

[24] See § 28-416.

[25] *Lagos v. U.S.*, ___ U.S. ___, 138 S. Ct. 1684, 1688-89, 201 L. Ed. 2d 1 (2018).

within a statute should be given related meaning.[26] Here, these principles dictate that the examples included in the list should guide our understanding of § 29-2266(5).

[14] Fourth, the district court's interpretation effectively inserts the words "or possession" after the word "use" in § 29-2266(5). But it is not for the courts to supply missing words or sentences to a statute to supply that which is not there.[27]

Finally, we are not persuaded that declining to classify a felony drug offense as a substance abuse violation will lead to an absurd result. Jedlicka argues that "[a]n absurd result would be created if probationers . . . face revocation of probation when caught with an illegal drug prior to using it, but merely face a custodial sanction if they consume the controlled substance and then submit a positive drug test."[28] And the district court similarly reasoned that possession of a controlled substance must be a substance abuse violation because one of the listed violations—testing positive for the use of illegal drugs—cannot occur without possessing the illegal drug.

Both of these premises are flawed. Contrary to Jedlicka's premise, a probationer does not necessarily face revocation from drug possession. Where, as here, the conditions of probation prohibit both law violations and the possession of drugs, a prosecutor can elect to seek a custodial sanction for possession in violation of one condition rather than revocation for a law violation contrary to another condition. In other words, probationers do not automatically face revocation for possession of drugs. And contrary to the district court's premise, testing positive can result without possession although we acknowledge that would not usually be the case. There is a logical reason for treating possession

---

[26] See, *State v. Smith*, 286 Neb. 77, 834 N.W.2d 799 (2013); *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990).

[27] *State v. Jones*, 264 Neb. 812, 652 N.W.2d 288 (2002).

[28] Brief for appellee at 7.

different from ingestion—the former is a crime,[29] while the latter is not.[30]

The law provides a range of techniques to discourage the use of an illegal controlled substance by a probationer. One using a controlled substance in his or her own home is unlikely to be caught in the act. Subsequent urinalysis testing can reveal usage. But because it is not a crime to have a positive urinalysis, administrative or custodial sanctions can then be imposed to hold a probationer accountable for probation violations without commencing revocation proceedings.[31] But even where a probationer is caught in the act of illegal possession, revocation does not follow automatically.

In determining whether to allege a law violation or a use or possession violation, prosecutors should respect the goals of the Legislature underlying the range of tools provided. In trying to slow or reverse the growth of Nebraska's prison population, the Legislature has authorized administrative or custodial sanctions as an alternative to revocation. Where drug use is the problem, § 29-2267(3) requires that custodial sanctions be used before pursuing probation revocation. But where a probationer engages in serious criminal conduct, revocation proceedings may be appropriate without first pursuing custodial sanctions. Because Jedlicka allegedly committed a new felony while already on probation for a felony, the State could institute revocation proceedings without showing that Jedlicka had served at least 90 days of cumulative custodial sanctions during her current probation term. We sustain the State's exception.

In doing so, we express no opinion regarding what the ultimate result of the proceeding should be. At this point, there has been no admission or adjudication of the existence of a

---

[29] See § 28-416.

[30] But, see, § 28-417(1)(g) (criminalizing being under influence of controlled substance).

[31] See §§ 29-2266.01 to 29-2266.03.

violation; nor has any factual record been developed. Our decision should not be read to foreshadow revocation of Jedlicka's probation. We determine only that the district court erred in quashing the information charging a probation violation based upon a law violation.

## Effect of Decision

Because the State's exception to the district court's decision has merit, we turn to the effect of our decision on Jedlicka's case. Under Neb. Rev. Stat. § 29-2316 (Reissue 2016):

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the prosecuting attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.

Whether our decision can affect Jedlicka depends on whether she "has been placed legally in jeopardy."[32]

[15,16] Application of § 29-2316 by its terms turns on whether the defendant has been placed in jeopardy in the trial court, not by whether the Double Jeopardy Clause bars further action.[33] In Nebraska, jeopardy attaches (1) in a case tried to a jury, when the jury is impaneled and sworn; (2) when a judge,

---

[32] § 29-2316.

[33] *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018).

hearing a case without a jury, begins to hear evidence as to the guilt of the defendant; or (3) at the time the trial court accepts the defendant's guilty plea.[34] Clearly, jeopardy has not attached under the circumstances here. We therefore remand the cause to the district court for further proceedings.

## CONCLUSION

We conclude that the district court erred in sustaining Jedlicka's motion to quash. The State's exception is sustained, and because jeopardy did not attach, the cause is remanded to the district court for further proceedings under § 29-2316.

EXCEPTION SUSTAINED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.

---

[34] *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019).